# Supreme Court of Florida

---

No. SC2024-1148

---

**PATRICK R. MCDOWELL,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 16, 2026

PER CURIAM.

Patrick Rene McDowell appeals his first-degree murder conviction and death sentence, raising five issues for review.[1]  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.  For the reasons below, we affirm.

---

1.  McDowell does not challenge his convictions and sentences on eight counts of aggravated assault on law enforcement officers and one count of injuring a police canine.

# I

## A

In September 2021, McDowell picked up a friend, Noelle Gale, in a stolen van at her house in Jacksonville. Earlier that day, McDowell and Gale had exchanged messages over Facebook and arranged to "hang out." Gale knew McDowell through her ex-boyfriend and befriended him because she knew he could get drugs.

After picking up Gale, McDowell drove with her to a Big Lots parking lot to meet a drug dealer. There, they bought thirty dollars' worth of methamphetamine, smoked some of it in the parking lot, and then headed north to go trail riding and shoot guns. McDowell and Gale made their way to the Florida-Georgia state line in Nassau County, eventually stopping at a gas station near Callahan, Florida, where they smoked more meth. To achieve a stronger high, McDowell inhaled the meth through his nose, otherwise known as "hot railing."

As McDowell and Gale were exiting the gas station, Joshua Moyers, an on-duty Nassau County Sheriff's Deputy, pulled up in his marked patrol car. McDowell noticed and nodded to Deputy Moyers on his way back to the van. After leaving the gas station,

McDowell noticed that Deputy Moyers was following them and told Gale that he thought Deputy Moyers would stop them and call for backup. McDowell said that he did not want to go back to jail.

Deputy Moyers ultimately initiated a traffic stop and approached the stolen van McDowell was driving. As Deputy Moyers was questioning McDowell, McDowell positioned a semiautomatic handgun that had been concealed by the center console next to his right knee. Deputy Moyers eventually asked McDowell to step out of the van. As Deputy Moyers opened the door, McDowell shoved his pistol out of the window and shot Deputy Moyers at close range in the face. Deputy Moyers fell to the ground, and McDowell reached out of the window again, firing two shots into Deputy Moyers' back as he laid on his side in the road. McDowell then sped away with Gale across the railroad crossing as the railroad crossing gates came down for an approaching train. McDowell told Gale he shot Deputy Moyers because "it was either him or the cop."

After grabbing a rifle out of the back, McDowell ditched the van in the woods and told Gale to turn her phone off so the police would not track them. The two hid under a trailer until McDowell

told Gale to turn her phone back on and give him a five-minute head start before calling 911. Gale left McDowell under the trailer to find her way back to the van. While walking back, she called 911. The 911 call ended when the police officers took Gale into custody. Gale cooperated with the investigation and helped police identify McDowell as the killer.

A manhunt followed. Jacksonville Sheriff's Officer Dan Cullen, along with his canine, Chaos, responded to aid in the manhunt. While searching the woods, Chaos alerted to a person in thick brush, at which point Officer Cullen let go of Chaos' leash. Two gunshots rang out, and Chaos yelped. Officer Cullen knew McDowell shot Chaos,[2] and the other participating officers returned a barrage of fire. Police later found a rifle in the woods where the firefight happened, but McDowell escaped.

The manhunt continued for five days, until law enforcement found McDowell at a baseball field hiding in the bathroom not far from where he gunned Deputy Moyers down. McDowell ultimately surrendered, and law enforcement took him into custody. Later,

---

2. Chaos fully recovered and returned to service.

law enforcement found a semiautomatic handgun in McDowell's hideout in some palmetto bushes. At the time of the murder, McDowell was on probation with a pending violation report.

**B**

McDowell was indicted for Deputy Moyers' murder and nine other charges,[3] and the State filed a notice of intent to seek the death penalty.[4] McDowell initially pleaded not guilty but later pleaded guilty to all counts. The State proffered the factual basis for the plea,[5] for which there was no objection or exception.

---

3. One count of Injuring or Killing a Police Dog; and eight counts of Aggravated Assault on a Law Enforcement Officer (one for each member of the search party McDowell fired upon after the murder).

4. In the notice, the State advised that the applicable aggravating factors were as follows: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or felony probation; (2) the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to a person; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; (4) the capital felony was a homicide committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; and (5) the victim of the capital felony was a law enforcement officer engaged in the performance of his official duties.

5. The factual proffer noted that Deputy Moyers conducted a

During the plea colloquy, the court informed McDowell of the maximum penalty for his charges and that the only possible sentences for the capital offense were death or life in prison. McDowell confirmed that he thoroughly discussed everything with his attorney and received satisfactory counsel. The court then explained the penalty phase, including the potential legislative changes to the jury unanimity requirement for a death sentence. McDowell still wanted to plead guilty. McDowell affirmed that he obtained no promises in exchange for pleading guilty, he was not under the influence of drugs or alcohol, and he could read and write. At the end of the hearing, the trial court accepted McDowell's guilty pleas after finding that they were entered freely and voluntarily with a full understanding of the consequences.

## C

Before the penalty phase, the Governor signed into law Senate

---

traffic stop on a stolen maroon minivan; McDowell was the driver; Deputy Moyers asked McDowell to exit the vehicle when McDowell grabbed the firearm and shot Deputy Moyers at close range in the face; McDowell then shot Deputy Moyers' back two times; Deputy Moyers died from his injuries. On Counts II through X: McDowell concealed himself in the woods and shot Chaos and placed eight law enforcement officers in fear for their lives.

Bill 450, which amended Florida's death penalty statute. *See* ch. 2023-23, Laws of Fla. (effective Apr. 20, 2023) (codified at § 921.141, Fla. Stat. (2023)). SB 450 became effective upon enactment, removing the requirement for a unanimous jury recommendation for a death sentence. *See id.* Under the new sentencing scheme, a jury may recommend a sentence of death to the court if at least eight jurors agree. *Id.* If fewer than eight jurors make that determination, the jury's recommendation must be a life sentence. *Id.* SB 450 maintained the other requirements of Florida's capital sentencing scheme.[6]

The State presented its case-in-chief for the penalty phase, presenting testimony from twenty-four witnesses. At the close of the State's case, it presented victim impact testimony from five

---

6. The remaining procedural safeguards include a unanimity requirement for finding at least one aggravating factor beyond a reasonable doubt before recommending a death sentence. § 921.141(2)(a), Fla. Stat. Aggravation, mitigation, and the ultimate jury recommendation are based on evidence presented at the penalty phase of trial. *Id.* Before making a recommendation, the jury weighs the aggravating factors with the mitigating circumstances. § 921.141(2)(b)2.a.-c., Fla. Stat. The trial court must impose a life sentence if the jury recommends one. § 921.141(3)(a)1., Fla. Stat. But if the jury recommends death, the trial court may opt for a life sentence or a death sentence. § 921.141(3)(a)2., Fla. Stat.

people. Before doing so, the trial court instructed the jury that the victim impact evidence was not an aggravating factor and was only to show the victim's uniqueness as an individual and the loss to the community by the victim's death.

Nicholas Carter worked for the Nassau County Sheriff's Office. Carter detailed his relationship with Deputy Moyers and what a loss Moyers' murder was for him and the community. Carter recounted Deputy Moyers' willingness to help others and his impeccable character. Deputy Moyers' fiancée provided a written statement about her relationship with Deputy Moyers and their engagement. Moyers' father described the type of man that McDowell killed. He spoke of his grief, his faith, and all of Deputy Moyers' positive attributes. Deputy Moyers' brother also spoke about finding out his brother died. He recounted how his brother's death destroyed his life and affected his family members' lives. Deputy Moyers' mother spoke about the loss of her son and having to plan a funeral for her child.

Defense counsel noted on the record that members of the audience were crying and reiterated a prior motion in limine to exclude victim impact statements because of the emotional

response, but the trial court did not make a ruling. The State rested.

The defense presented mitigation evidence from forty witnesses about McDowell's upbringing, life, work experience, and military service. Overall, the defense argued and presented twenty-four mitigating circumstances relating to McDowell's background, life, military service, and character.

Next, McDowell took the stand. He used his direct examination to express remorse. Cross-examination highlighted McDowell's pattern of criminal behavior. McDowell admitted the killing was cold, calculated, and premeditated. He then detailed his thought process as he murdered Deputy Moyers and effectuated his escape.

At the close of the case, McDowell asked the court to reopen the evidence to allow him to provide a sworn statement to the jury. The court thoroughly questioned McDowell about his decision to provide a statement. The trial court emphasized to McDowell the "high probability" that his statement would support the "aggravating factors in this case and may negatively impact the mitigating evidence," as well as increase the likelihood of a death

- 9 -

sentence. McDowell acknowledged his attorneys were very much against it, but he said it was what he needed to do. McDowell indicated he was making the statement in accord with his own moral beliefs and that he was more concerned with doing what he believed was right than the penalty itself.

The court reopened the testimony. McDowell said he did not think it was right for other people to try to excuse what he did and minimize it. He was unable to blame the murder on anything but his own selfish disregard for Deputy Moyers' life. McDowell said that he deserved the same sentence that he gave Deputy Moyers. McDowell admitted that months before the murder, he decided that he would kill whoever tried to arrest him. He lured Deputy Moyers to a dark secluded area after the police lights flashed. He kept driving until he found a good spot and kept the van in drive with his foot on the brake. He checked his pistol before situating it in a concealed spot with quick access. He killed Deputy Moyers to escape. McDowell claimed his remorse was not enough to outweigh the aggravators and that he did not want or deserve mercy.

After closing arguments and deliberations, the jury found five aggravating factors proven beyond a reasonable doubt and

recommended a sentence of death by an 11-1 vote. Because McDowell opposed a death sentence, the trial court next held a *Spencer*[7] hearing where the State presented argument in support of a death sentence, and McDowell presented argument for a life sentence—supplemented with written reports from the defense experts. The trial court then considered the case for imposition of the sentence. The trial court found all the proposed aggravators proven beyond a reasonable doubt.[8]

---

7.  *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

8.  The court assigned the following weight to each aggravator:

1. The capital felony was committed by a person previously convicted of a felony and on felony probation. Moderate weight.
2. McDowell was previously or contemporaneously convicted of a felony involving the use or threat of violence to the person. Very great weight.
3. The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; and the victim of the capital felony was a law enforcement officer engaged in the performance of his duties. Very great weight.
4. The capital felony was a homicide and committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Very great weight. "[T]he aggravating factors of 'avoid arrest/hinder enforcement of laws' and 'murder of a law enforcement officer' are duplicative because both factors are based on a single aspect of the offense, that

- 11 -

The defense proposed and established the existence of twenty-four other factors in McDowell's background that would mitigate against imposition of the death penalty under section 921.141(7)(h), Florida Statutes.

The court found no other supported statutory mitigating circumstances. After weighing the aggravating and mitigating factors, the court found, "without hesitation," that the aggravating factors outweighed the mitigating circumstances. The court agreed with the jury that the penalty of death was the appropriate sentence for the premeditated murder of Deputy Moyers. The court adjudicated McDowell guilty on all counts and sentenced him to death.

**II**

McDowell raises five issues related to his penalty phase, each

---

the victim was a law enforcement officer." *Kearse v. State*, 662 So. 2d 677, 685-86 (Fla. 1995) (citing *Armstrong v. State*, 642 So. 2d 730, 738-39 (Fla. 1994)). These aggravating factors, therefore, merge into one and were properly considered as a single aggravating factor by the court.

of which is foreclosed by precedent.[9]  Finding no reason to recede from those precedents, we reject each of McDowell's arguments.

**A**

First, McDowell argues that application of section 921.141, Florida Statutes, as amended in 2023, violates the ex post facto clauses of the United States and Florida Constitutions.  But we recently rejected this argument in *Hunt v. State*, 428 So. 3d 43, 58 (Fla. 2025), and we do so again here for the same reasons.  We likewise reject McDowell's claim that section 775.022(3), Florida Statutes, prevents the application of SB 450 to his penalty phase. We addressed and rejected an identical argument in *Jackson v. State*, 430 So. 3d 64, 76-77 (Fla. 2025).  As in *Jackson*, the statutory change does not affect McDowell's sentence.  *See Love v. State*, 286 So. 3d 177, 186 (Fla. 2019) (holding that an amended statute that involves a procedural change applies to proceedings that take place on or after the statute's effective date).  Because

---

9.  All five issues McDowell raises involve questions of law relating to the constitutionality of statutes, so we review the issues de novo.  *Jackson v. State*, 191 So. 3d 423, 426 (Fla. 2016) (citing *Crist v. Ervin*, 56 So. 3d 745, 747 (Fla. 2010)).

McDowell's penalty phase had not begun, the trial court properly and prospectively applied the statutory amendment to his case. So there is no violation of section 775.022.

**B**

Second, McDowell argues the nonunanimity of a death sentence recommendation violates the Sixth and Eighth Amendments of the U.S. Constitution and article I, section 22 of the Florida Constitution. To the extent this argument is unpreserved, our precedent says McDowell may raise a facial challenge to section 921.141(2)(c), Florida Statutes, under the Eighth Amendment, for the first time on appeal. *Westerheide v. State*, 831 So. 2d 93, 105 (Fla. 2002); *Fletcher v. State*, 415 So. 3d 147, 162 (Fla. 2025). This claim though is also foreclosed by precedent. *Jackson*, 430 So. 3d at 75-76. Indeed, McDowell recognizes we previously decided this issue adversely to his position, but he urges us to reconsider, particularly in light of *Ramos v. Louisiana*, 590 U.S. 83 (2020). *See State v. Poole*, 297 So. 3d 487, 501-08 (Fla. 2020) (holding that neither the Sixth or Eighth Amendment to the U.S. Constitution, nor article I, section 22 of the Florida Constitution, requires a unanimous jury recommendation for death). We declined a similar

invitation in *Jackson* and do so again. *See also Hunt*, 428 So. 3d at 54-55.

## C

Next, McDowell argues that this Court's holding in *Windom v. State*, 656 So. 2d 432, 438 (Fla. 1995), allowing victim impact evidence to be presented to the jury during the penalty phase, was wrongly decided. He argues that introduction of evidence or argument about the impact of the victim's death, even as limited by the holding in *Windom*, is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, as well as article I, sections 2, 9, 16, and 17 of the Florida Constitution.[10]

As McDowell recognizes, the United States Supreme Court has held that the Eighth Amendment "erects no per se bar" to victim impact evidence. *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (emphasis omitted). Indeed, the United States Supreme Court

---

10. McDowell cites these provisions without providing any independent analysis for each provision. Likewise, McDowell does not argue specific testimony was impermissible under the statute governing victim impact statements. § 921.141(8), Fla. Stat.

- 15 -

characterized victim impact evidence as "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question." *Id.* at 825. The Court acknowledged the state's legitimate interest in reminding the sentencer that just as the defendant should be considered as an individual, so too should the victim whose death represents a unique loss to society and in particular to his family. Likewise, we have recognized that victim impact evidence is permissible if it is "limited to that which is relevant as specified" in the statute. *Windom*, 656 So. 2d at 438.

McDowell claims that Florida's capital sentencing scheme prohibits the jury from considering as aggravation anything other than the proven aggravating circumstances. *See* § 921.141(2)(b), Fla. Stat. The introduction of victim impact evidence, McDowell argues, therefore undermines the fairness of the proceedings and risks wholly arbitrary and capricious action from jury to jury, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Essentially, McDowell argues that victim impact evidence is unauthorized nonstatutory aggravation evidence. But we previously rejected this argument, finding that "the procedure for addressing

victim impact evidence, as set forth in the statute, [does not] impermissibly affect[] the weighing of the aggravators and mitigators . . . or otherwise interfere[] with the constitutional rights of the defendant." *Windom*, 656 So. 2d at 438; *see also Johnson v. State*, 397 So. 3d 626, 642 (Fla. 2024). We likewise reject McDowell's argument. Victim impact evidence is categorically different from aggravating factors in that it, "as set forth [by statute], allows the jury to consider 'the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death.' " *Windom*, 656 So. 2d at 438 (quoting § 921.141(7) Fla. Stat. (1993)). This remains a constitutionally permissible method of informing the sentencing authority about the specific harm caused by the crime.

### D

McDowell's final argument is that Florida's death penalty and statutory scheme is in violation of the Eighth and Fourteenth Amendments. He makes two distinct arguments in support of his position.

McDowell first argues that the elimination of comparative proportionality review, the expansion in scope and number of

Florida's aggravating factors, and the removal of the unanimity requirement for recommending a death sentence fail to narrow the class of persons eligible for the death penalty. McDowell cites *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988), in support of his argument.

McDowell concedes that we have already rejected similar challenges but asks us to reconsider now that the Legislature has removed the unanimity requirement for death sentence recommendations. *Cox v. State*, 390 So. 3d 1189, 1200 (Fla. 2024) ("[A]rguments on this point are well-worn, and this Court has repeatedly rejected them."), *cert. denied*, 145 S. Ct. 1084 (2025); *see also Boatman v. State*, 402 So. 3d 900, 923 (Fla. 2024); *Bevel v. State*, 376 So. 3d 587, 597-98 (Fla. 2023); *Wells v. State*, 364 So. 3d 1005, 1015 (Fla. 2023); *Joseph v. State*, 336 So. 3d 218, 227 n.5 (Fla. 2022) (declining to address claim that Florida's death penalty statute is unconstitutional because this Court has repeatedly rejected the same argument).

We recently summarily rejected similar arguments in *Hunt*, 428 So. 3d at 54-55. There we held that Florida's death penalty provisions meet the constitutionally required safeguards to ensure

that there are no "arbitrary, capricious, or freakish" death sentences. *Id.* at 55 (quoting *Pulley v. Harris*, 465 U.S. 37, 45 (1984)). We also reject McDowell's argument here.

McDowell next argues the death penalty violates the Eighth Amendment of the U.S. Constitution for three reasons: (1) serious unreliability, (2) arbitrariness in application, and (3) unconscionably long delays that undermine the death penalty's penological purpose. He argues these three reasons make the death penalty usurp evolving standards of decency. McDowell acknowledges in his initial brief that this Court has decided the issue and asks us to reconsider our holding in *Loyd v. State*, 379 So. 3d 1080 (Fla. 2023). Finding no reason to recede from our prior decisions on this issue, we affirm. *See Poole*, 297 So. 3d at 504-05.

## III

Finally, we turn to our independent obligation to review the sufficiency of the evidence. In capital cases involving a guilty plea to first-degree murder, we review the record to determine whether the plea was "knowing, intelligent, and voluntary." *Noetzel v. State*, 328 So. 3d 933, 952 (Fla. 2021) (quoting *Doty v. State*, 170 So. 3d 731, 738 (Fla. 2015)); Fla. R. App. P. 9.142(a)(5). The Court also

reviews the factual basis for the plea to decide whether "competent, substantial evidence" supports the conviction. *Noetzel*, 328 So. 3d at 952 (quoting *Doty*, 170 So. 3d at 739).

McDowell knowingly, intelligently, and voluntarily entered his guilty plea. The trial court thoroughly explained the rights McDowell waived by entering a guilty plea. The court also told McDowell the maximum sentence. McDowell affirmatively answered that he was not under the influence or coerced and that he entered the plea because he was guilty.

To prove first-degree premeditated murder, the State must prove three elements: (1) death of the victim; (2) the defendant caused the death by criminal act; and (3) the victim's death was premeditated. *Miller v. State*, 379 So. 3d 1109, 1129 (Fla. 2024). The State offered a sufficient factual basis for each element of first-degree murder and produced evidence during the penalty phase showing all three elements. The proffered facts discussed the traffic stop that preceded Deputy Moyers' murder and the ensuing manhunt; how Deputy Moyers died at McDowell's hand; and how McDowell also admitted that he contemplated before the traffic stop that he was not going back to jail and would kill whoever got in his

way.  This evidence supports the conviction.

Competent, substantial evidence also supports McDowell's plea, and he entered the plea freely, knowingly, and voluntarily.

**IV**

For the reasons above, we affirm McDowell's first-degree murder conviction and death sentence.

It is so ordered.

COURIEL, C.J., and MUÑIZ, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

With respect to McDowell's arguments regarding jury unanimity in capital sentencing, I acknowledge that this Court's conclusions are consistent with what this Court has held in *Poole*, *Hunt*, and *Jackson*.[11]  For this reason, I concur in the result affirming McDowell's death sentence.

---

11.  *State v. Poole*, 297 So. 3d 487 (Fla. 2020); *Hunt v. State*, 428 So. 3d 43 (Fla. 2025); *Jackson v. State*, 430 So. 3d 64 (Fla. 2025).

Nonetheless, consistent with my dissent in *Poole* and my concurring in result opinions in *Hunt* and *Jackson*, I continue to emphasize Florida's outlier status among states that impose the death penalty.

I also continue to adhere to my dissenting opinion in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020), which receded from decades of proportionality review in cases involving a direct appeal of a sentence of death.

An Appeal from the Circuit Court in and for Nassau County,
    James H. Daniel, Judge
    Case No. 452021CF000725CFAXYX

Matthew J. Metz, Public Defender, Robert J. Pearce III, Assistant Public Defender, and Natalie R. Gossett, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, and Jonathan S. Tannen, Assistant Attorney General, Tampa, Florida,

    for Appellee